| | |
|---|---|
| RICHARD SENNA,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD CICCONE, KEVIN SWAIN,<br>KEVIN VIVEIROS, ROBERTO NUNES,<br>TOWN OF FAIRHAVEN, CITY OF<br>NEW BEDFORD and MICHAEL MELLO,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| | Civil Action No. 14-12849-DJC |

## MEMORANDUM AND ORDER

CASPER, J.                                                                        February 23, 2015

## I.      Introduction

Plaintiff Richard Senna ("Senna") has filed this lawsuit pursuant to 42 U.S.C. § 1983

against Defendants Richard Ciccone ("Ciccone"), Kevin Swain ("Swain"), Kevin Viveiros

("Viveiros"), Roberto Nunes ("Nunes"), Michael Mello ("Mello"), the town of Fairhaven

("Fairhaven") and the city of New Bedford ("New Bedford"), alleging violations of the Fourth

and Fourteenth Amendments to the United States Constitution as to Ciccone, Swain, Viveiros,

Mello and/or Nunes (Count I), the town of Fairhaven (Count II) and the city of New Bedford

(Count III) as a result of his allegedly unconstitutional arrest.  D. 4 (Am. Compl.).  Defendants

have moved to dismiss.  D. 9; D. 11; D. 26.  For the reasons stated below, the Court DENIES the

motion as to Ciccone, Swain and Viveiros, D. 9, ALLOWS the motion as to Fairhaven, D. 11, and

1

ALLOWS IN PART and DENIES IN PART the motion as to New Bedford, Mello and Nunes, D. 26.

## II.       Standard of Review

In considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court asks whether the complaint offers "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To state a plausible claim, a complaint need not contain detailed factual allegations, but it must recite facts sufficient to "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true [even if doubtful in fact]." Twombly, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). First, the Court must distinguish between factual and conclusory legal allegations in the complaint. Morales-Cruz v. Univ. of Puerto Rico, 676 F.3d 220, 224 (1st Cir. 2012). Second, taking the plaintiff's allegations as true, the Court must draw "the reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). However, "[i]n determining whether a [pleading] crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.' . . . This context-specific inquiry does not demand 'a high degree of factual specificity.'" Garciá-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (internal citations omitted).

## III.      Factual Background

Unless otherwise noted, the facts are as described in Senna's amended complaint, D. 4. On May 1, 2013, Senna was waiting in the lobby of the New Bedford District Courthouse for a hearing in a criminal matter in which he was the defendant. Id. ¶¶ 10-11. Ciccone, Swain and

Viveiros, all Fairhaven police officers, were also waiting in the same area to testify against Senna, Ciccone as the alleged victim and Swain and Viveiros as investigating officers.  Id. Mello was on duty as the New Bedford Police officer assigned as the court officer for the police department to the courthouse.  Id. ¶ 12.

Senna alleges that Ciccone, Swain and/or Viveiros, acting jointly and severally, with the intention of using their status as police officers to influence and instigate Senna's seizure, falsely informed Mello that Senna had taken their pictures with his cell phone while all involved were in the courthouse lobby, in violation of Massachusetts's witness intimidation statute, Mass. Gen. L. c. 268 § 13B.  Id. ¶ 13.  Senna further alleges that Mello, upon hearing the allegations by Ciccone, Swain and/or Viveiros, informed Senna that he was under arrest.  Id.  Thereafter, Officer Nunes, also of the New Bedford police department, was dispatched to the courthouse. Id.  Nunes spoke with Mello, Ciccone, Swain and Viveiros, and then arrested Senna.  Id. ¶ 14-15. Nunes transported Senna to the New Bedford police station, where Senna was booked and then transported to jail.  Id. ¶ 15-16.  He was held overnight and arraigned the next day on a complaint charging him with a violation of the witness intimidation statute.  Id. at 16.  The complaint was later dismissed at the request of the Commonwealth.  Id.

IV.    **Procedural History**

Senna filed this lawsuit on July 2, 2014, D. 1, and amended his complaint on July 13, 2014, D. 4.  The town of Fairhaven and the Fairhaven officers, Ciccone, Swain and Viveiros, moved to dismiss, D. 9; D. 11, followed by a motion to dismiss by the city of New Bedford, Mello and Nunes, D. 26.  The Court heard the parties on the pending motions on January 7, 2015 and took these matters under advisement.  D. 36.

## V.     Discussion

### A.     Claims Against the Fairhaven and New Bedford Police Officers (Count I)[1]

Senna invokes § 1983 to ground his claims.  "Section 1983 requires three elements for liability:  deprivation of a right, a causal connection between the actor and the deprivation, and state action."  Sanchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009).  Senna alleges Ciccone, Swain and Viveiros, the Fairhaven police officers, falsely accused him of witness intimidation and that Mello and Nunes, the New Bedford police officers, arrested him based on this false information and absent probable cause, in "violation of the rights of the Plaintiff to be free from unreasonable searches and seizures, as guaranteed to him under the 4th and 14th Amendments."  D. 4 ¶ 18.  Ciccone, Swain and Viveiros argue that their participation in Senna's arrest was too attenuated for liability to attach given that they did not personally arrest him, D. 10 at 6, and the New Bedford officers argue they had probable cause for the arrest, D. 27 at 7. The Court does not agree that the conduct of the Fairhaven officers is insufficient to allege a basis for liability at this stage.  Additionally, because the Court cannot say that Nunes and Mello had probable cause upon which to arrest, the claims against the New Bedford officers will not be dismissed.

#### 1.     The Fairhaven Officers

The Fairhaven officers may be held liable for falsifying information relating to Senna's conduct despite the fact that they did not personally arrest him.  Under § 1983, "an actor is

---

[1]Senna's complaint does not indicate whether he brings his action against the police officers in their official or individual capacities.  Senna's opposition to the Fairhaven defendants' motion provides, however, that the action "is against [the officers] as individuals," D. 17 at 2, and the Court has addressed Count I as a claim against the officers in their individual capacities.

'responsible for those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties.'" Sanchez v. Pereira-Castillo, 590 F.3d 31, 51 (1st Cir. 2009) (quoting Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 561 (1st Cir. 1989)). Because Senna has alleged that his arrest resulted from the Fairhaven officers providing false information "with the intention of using their status as police officers to influence and instigate" the arrest, D. 4 ¶ 13, his complaint survives a motion to dismiss as against these officers.

The Fairhaven officers may also be liable despite the fact that their attendance at the hearing was not in the course of their employment, although at this stage the Court lacks sufficient information to conclude that they were not. Even assuming *arguendo* that they were not, state action may be found if the officers utilized their position in furtherance of the misconduct. "[T]he key determinant is whether the actor, at the time in question, purposes to act in an official capacity or to exercise official responsibilities pursuant to state law." Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 46 (1st Cir. 1999) (quoting Martinez v. Colon, 54 F.3d 980, 986 (1st Cir. 1995)). Liability may attach if the "conduct is such that the actor could not have behaved in that way but for the authority of his office." Martinez, 54 F.3d at 986 (finding no state action by police officer defendant when the record was "transpicuously clear that throughout the course of [the plaintiff's] ordeal [the defendant] did not exercise, or purport to exercise, any power (real or pretended) possessed by virtue of state law," nor were his actions "in any meaningful way related either to his official status or to the performance of his police duties"). Whether the Fairhaven officers were acting under color of state law is considered "in light of the totality of surrounding circumstances" and "turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." Id. at 986-87. Relevant factors include but are not limited to "a police officer's garb; an

officer's duty status, including the existence of a regulation providing that officers are on duty twenty-four hours a day; the officer's use of a service revolver; and, the location of the incident." Parrilla-Burgos v. Hernandez-Rivera, 108 F.3d 445, 449 (1st Cir. 1997) (quoting Martinez, 54 F.3d at 986-87). While "'acting under color of law' includes 'acting under pretense of law' for purposes of a state action analysis, there can be no pretense if the challenged conduct is not related in some meaningful way either to the officer's governmental status or to the performance of his duties." Martinez, 54 F.3d at 987.

Here, Senna alleges that Swain and Viveiros were at the courthouse "in the course of their employment as police officers" and that Ciccone was present "as the alleged victim." D. 4 ¶ 10. He further alleges that Mello arrested him at "the instigation of Ciccone, Swain and/or Viveiros and their status as police officers" and that Ciccone, Swain and Viveiros were acting under color of state law when they fabricated a story "with the intention of using their status as police officers to influence and instigate Mello to seize [him]" and that Mello did so as a result of their status as police officers. Id. ¶ 13. Although Senna does not allege that Ciccone, the victim in the underlying criminal matter, was present in the courthouse as a police officer, Senna argues he may be liable as a private actor acting under color of law, "particularly in light of the fact that the complaint alleges that he used his status as a police officer to influence and instigate the New Bedford Police officers to seize the Plaintiff." D. 17 at 6 (citing Am. Compl., D. 4 ¶ 13). The allegations at this stage are sufficient to withstand a motion to dismiss, as a "private party's joint participation with a state official in a conspiracy" establishes action "under color of law for purposes of [§ 1983]." Lugar v. Edmondson Oil Co., 457 U.S. 922, 931 (1982) (quotation omitted); see Pitchell v. Callan, 13 F.3d 545, 548 (2d Cir. 1994) (providing "liability may be

6

found where a police officer, albeit off-duty, nonetheless invokes the real or apparent power of the police department").

As to the underlying constitutional violation necessary to sustain § 1983 liability, Senna alleges the officers unlawfully seized him in violation of his rights "to be free from unreasonable searches and seizures, as guaranteed to him under the 4th and 14th Amendments." Id. ¶ 18. "The right to be free from unreasonable seizure (and, by extension, unjustified arrest and detention) is clearly established in the jurisprudence of the Fourteenth Amendment (through which the Fourth Amendment constrains state action)." Camilo-Robles v. Hoyos, 151 F.3d 1, 6 (1st Cir. 1998). The Fairhaven officers may be liable for bringing about a false arrest. See Mead v. McKeithen, 571 F. App'x 788, 791 (11th Cir. 2014) (denying qualified immunity to off-duty police officer who provided falsified affidavit to establish probable cause to arrest plaintiff, and noting, the "fact that [the officer asserting qualified immunity] did not actually make the arrest is irrelevant since we have held that where falsified evidence provided by an officer is necessary to substantiate the probable cause for a plaintiff's arrest, that officer can be held liable"); Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997) (reversing grant of summary judgment on false arrest claim because '[f]ailure to intercede to prevent an unlawful arrest can be grounds for § 1983 liability"); Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994) (reversing district court's conclusion that officer present for unlawful arrest could not be liable, as "[a]n officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring"). "[A] warrantless arrest

by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). Given that Senna alleges the Fairhaven officers, with "the intention of using their status as police officers to influence and instigate Mello to seize [Senna] without a warrant, falsely, maliciously, and with the intent of causing [Senna] to be arrested . . . informed Mello that [Senna] had committed that offense," D. 4 ¶ 13, Senna has sufficiently alleged a constitutional violation.

Moreover, the Court cannot resolve the issue of qualified immunity as to the Fairhaven officers at this juncture, because taking the allegations in the light most favorable to Senna, the Court cannot say at this stage that the officers are immune from suit. See Pena-Borrero v. Estremeda, 365 F.3d 7, 14 (1st Cir. 2004) (reversing dismissal of complaint and refusing to apply qualified immunity because "[t]aken in the light most favorable to appellant, the allegations show that defendants pursued appellant's arrest and incarceration in the face of unambiguous evidence that their warrant was unenforceable"). In qualified immunity analysis, the Court asks "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado v. Fontanes, 568 F.3d 263, 269 (quoting Pearson v. Callahan, 555 U.S. 223, 224 (2009)). The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. (quotation omitted).

As of 2010, it was "beyond peradventure that arrests procured on the basis of material false statements or testimony given in reckless disregard for the truth violate the Fourth Amendment." Martinez-Rodriguez v. Guevara, 597 F.3d 414, 420 (1st Cir. 2010). It was also "clearly established law that the Fourth Amendment requires that arrests be based upon probable

8

cause." Id. Here, given the allegations in the complaint, the Court cannot grant qualified immunity at this juncture. See Moses v. Mele, 711 F.3d 213, 216 (1st Cir. 2013) (recognizing that if a quality immunity defense turns on a question of fact unclear on the summary judgment record, it is improper to dispose of the claim, but affirming summary judgment because even accepting plaintiff's version of events, qualified immunity would still apply).

### 2.     *The New Bedford Officers*

The New Bedford officers also assert this suit is barred by qualified immunity, which as stated above, offers government officials immunity by "ensur[ing] that insubstantial claims against government officials will be resolved before discovery." Maldonado, 568 F.3d at 268. Similar to the Fairhaven officers, the Court cannot grant qualified immunity to the New Bedford officers at this stage, when Senna plausibly alleges the New Bedford officers lacked probable cause to arrest in violation of his right against unreasonable searches and seizures and that such conduct was clearly established as a constitutional violation at the time of the arrest.

Senna's complaint provides that Ciccone, Swain and/or Viveiros "informed Mello that the Plaintiff had committed [witness intimidation under § 13B] by taking their pictures with his cell phone, while they were present in said public lobby of the New Bedford District Courthouse." D. 4 ¶ 13. Thereafter, Nunes "was informed by Ciccone, Swain and/or Viveiros that the Plaintiff, while waiting in said public lobby of the courthouse, had raised his cell phone to eye level, with it pointing in the direction of Ciccone, Swain and/or Viveiros." Id. ¶ 14. Senna's conclusion that "even assuming that Ciccone, Swain and Viveiros were telling the truth in making that statement, no reasonable police officer acting in good faith could have believed that such an action on the part of the Plaintiff, without more, constituted probable cause to arrest" for this charge, D. 28 at 3, plausibly supports a § 1983 claim against the New Bedford officers.

To prove a § 1983 false arrest claim, "a plaintiff must show at minimum that the arresting officers acted without probable cause." Mann v. Cannon, 731 F.2d 54, 62 (1st Cir. 1984). Probable cause exists when there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). The question of probable cause is an objective inquiry. Holder v. Town Of Sandown, 585 F.3d 500, 504 (1st Cir. 2009).

Based on the facts as alleged, Mello and Nunes understood Senna raised his cell phone to eye level in the direction of testifying witnesses while waiting for a hearing in his criminal matter. The crime charged against Senna, Mass. Gen. L. c. 268 § 13B provides in part, "whoever directly or indirectly, willfully" "misleads, intimidates or harasses" a witness "with the intent to impede, obstruct, delay, harm, punish or otherwise interfere thereby, or do so with reckless disregard," shall be punishable under the statute. Mass. Gen. L. c. 268, § 13B. "Conviction of witness intimidation under G.L. c. 268, § 13B, requires the Commonwealth to prove beyond a reasonable doubt that '(1) the target of the alleged intimidation was a witness in a stage of a criminal proceeding, (2) the defendant wilfully [sic] endeavored or tried to influence the target, (3) the defendant did so by means of intimidation, force, or threats of force, and (4) the defendant did so with the purpose of influencing the complainant as a witness.'" Commonwealth v. Robinson, 444 Mass. 102, 109 (2005) (quoting Commonwealth v. McCreary, 45 Mass. App. Ct. 797, 799 (1998)).

Although the probable cause inquiry requires only that a reasonably prudent person, based on the totality of the circumstances, would believe that Senna "has committed, is committing, or is about to commit" the crime of witness intimidation, the Court cannot conclude

on the present record that the officers had probable cause to arrest. Although the context in which a defendant's action occurs matters, it is alleged that the New Bedford officers were told only that the Senna photographed the Fairhaven officers while they were all present at the courthouse for a hearing in Senna's criminal case in which the Fairhaven officers were witnesses. D. 4 ¶¶ 14, 15. There is no allegation regarding Senna's intent and the Court cannot conclude on this record that photographing an officer in itself is an intimidating act.

Unlike the scenario in Commonwealth v. Casiano, 70 Mass. App. Ct. 705, 708-09 (2007), there is no suggestion that any of the officers were acting in an undercover capacity nor are there any facts on this record to suggest willful conduct by Senna to use the photos to violate § 13B. It may very well be, on a developed record, that probable cause for the arrest is established, but the Court cannot say so at this juncture. In Casiano, the defendant in a drug case "removed a cell phone with an apparent picture-taking component from his pocket, and pointed it at the undercover officer and other officers who were sitting in the court house corridor." Id. at 706. After the phone was confiscated, the defendant told the undercover officer "What do you think I am, fucking stupid? I already emailed the pictures to my house before you took the phone!" Id. The Massachusetts Appeals Court affirmed a judgment against the defendant for violation of § 13B. Id. at 710. The Casiano court concluded that the defendant's comment "in turn instilled fear in the officer that his cover had been compromised and his safety put in danger." D. 17 at 8.

Here, the officers were not serving in an undercover capacity nor are there facts alleged to support a finding of willful intent by Senna to intimidate, and Senna therefore plausibly alleges a warrantless arrest without probable cause. As to the availability of qualified immunity, at the time of Senna's arrest, it was "clearly established law that the Fourth Amendment requires that arrests be based upon probable cause." Martinez-Rodriguez, 597 F.3d at 420. Because is

unclear on the present record whether there were sufficient facts and circumstances to support a probable cause finding, and therefore the Court cannot conclude that the New Bedford officers are entitled to qualified immunity. Senna has plausibly alleged "a denial of rights secured by the Constitution or by federal law," Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997) and the claim against the officers will proceed.

Accordingly, the Court DENIES the motion to dismiss as to Nunes and Mello and DENIES the motion to dismiss as to Ciccone, Swain and Viveiros.

B. **Failure to Train and Supervise Against Fairhaven and New Bedford (Counts II and III)**

Senna alleges the town of Fairhaven and the city of New Bedford's failure to train and supervise their police officers led to his allegedly unconstitutional arrest in violation of the Fourth and Fourteenth Amendments. D. 4 ¶¶ 21, 24. For municipalities to be liable under a theory of failure to train and/or supervise, a "policy or custom must have caused the depravation of the plaintiff's constitutional rights and the municipality must have the requisite level of culpability: deliberate indifference to the particular constitutional right of the plaintiff." Crete v. City of Lowell, 418 F.3d 54, 66 (1st Cir. 2005). "Triggering municipal liability on a claim of failure to train requires a showing that municipal decisionmakers either knew or should have known that training was inadequate but nonetheless exhibited deliberate indifference to the unconstitutional effects of those inadequacies." Haley v. City of Boston, 657 F.3d 39, 52 (1st Cir. 2011). A plaintiff may succeed only if he shows "that the constitutional violation had a 'direct causal link' to the deficiency in training." Jones v. City of Boston, 752 F.3d 38, 59 (1st Cir. 2014) (quoting Canton v. Harris, 489 U.S. 378, 385 (1989)). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011).

Generally a plaintiff must offer "[a] pattern of similar constitutional violations by untrained employees," because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Id. at 1360 (citation omitted). A plaintiff may also show deliberate indifference based upon single incident of misconduct, in what the Supreme Court has described as a "narrow" exception, if the likelihood of a constitutional violation as a result of the failure to train was so "patently obvious" as to be a "highly predictable consequence." Id. at 1361.

> Here, Senna's allegations are that his arrest was:
>
> the direct and proximate result of a custom, policy and/or usage of the Town of Fairhaven [in the count against New Bedford, the City of New Bedford] to fail to train and supervise the officers of the Fairhaven Police Department [in the count against New Bedford, the City of New Bedford] as to the limitations of the 1st, 4th and 14th Amendments of the Constitution of the United States on the power and authority of police officers to seize, arrest and/or charge with a criminal offense any person engaging in the act of photographing police officers, witnesses or other persons by use of cell phone cameras in public places, including but not limited to failing to promulgate any policies, procedures, protocols, general orders and/or directives of any kind, to which it requires officers of the Fairhaven Police Department [in the count against New Bedford, the New Bedford Police Department] to adhere, in regard to such officers making seizures and/or arrests of persons, as a result of such persons having used cell phone cameras to photograph police officers, witnesses and/or other persons in courthouses or other public places and/or in regard to such officers seeking the issuance of criminal complaints against such persons who took such photographs.

D. 4 ¶¶ 21, 24. Senna fails to allege a pattern of violations, and thus the Court addresses whether his claims against the town of Fairhaven and the city of New Bedford plausibly state a failure to train claim based on the single incident of his arrest. As such, the Court considers the "likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights," because that conclusion "could justify a finding that policymakers' decision not to train the officer reflected 'deliberate indifference' to

13

the obvious consequence of the policymakers' choice-namely, a violation of a specific constitutional or statutory right." Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 409 (1997).

As to the town of Fairhaven, Senna's claim fails because the unconstitutional conduct alleged is insufficiently related to the allegations regarding a failure to train and/or supervise. See Canton, 489 U.S. at 391 (providing "the identified deficiency in a city's training program must be closely related to the ultimate injury"). A theory of failure to train and/or supervise derives the necessary deliberate indifference from the likelihood of a reoccurring situation, which, because of a failure to train, will likely result in unconstitutional conduct. The alleged conduct of the Fairhaven officers concerning the false story regarding Senna's use of his cell phone is a fact-specific circumstance not likely to re-occur. See McGrath v. Town of Sandwich, No. 13-12381-NMG, 2014 WL 2047891 *7 (D. Mass. May 16, 2014) (dismissing claim against town for failure to train or supervise based on principal's failure to conduct disciplinary proceedings in accordance with student's due process rights, because plaintiffs failed to provide evidence of similar conduct, that school administrators in other settings "failed to inform students facing disciplinary actions of the evidence against them," or that there was an "obvious likelihood" that failing to train on the relevant standard, included in the school's handbook, would result in a constitutional violation).

As to New Bedford, it is a closer question as to whether an arrest absent probable cause under a witness intimidation statute is a "patently obvious" result of a failure to train as to the "power and authority of police officers to seize, arrest and/or charge with a criminal offense," "persons having used cell phone cameras to photograph police officers, witnesses and/or other persons in courthouses." D. 4 ¶¶ 21, 24. Senna must allege that New Bedford "knew or should

have known that training was inadequate but nonetheless exhibited deliberate indifference to the unconstitutional effects of those inadequacies." Haley, 657 F.3d at 52.

Senna alleges that his arrest was a result of New Bedford's "failure to promulgate any policies, procedures, protocols, general orders and/or directives of any kind" as to "seizures and/or arrests of persons, as a result of such persons having used cell phone cameras to photograph police officers, witnesses and/or other persons in courthouses or other public places and/or in regard to such officers seeking the issuance of criminal complaints against such persons who took such photographs." D. 4 ¶ 24. In Connick, the Supreme Court reversed a finding of liability based on a single-incident theory when the plaintiff failed to show that the unconstitutional conduct was "so predictable that failing to train the prosecutors amounted to conscious disregard." Connick, 131 S. Ct. at 1365 (providing that to prove deliberate indifference the plaintiff would have to show that the defendant was on notice that "absent additional specified training, it was 'highly predictable' that the prosecutors in his office would be confounded by those gray areas and make incorrect [] decisions as a result"). The Court differentiated the facts before it, failure to train prosecutors as to their Brady v. Maryland, 373 U.S. 83 (1963), disclosure obligations, from the hypothetical it previously offered in Canton: "a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." Id. at 1361. Despite the fact that the conduct of the New Bedford officers, an alleged seizure and arrest absent probable cause, is closer to the alleged violation than that of the Fairhaven officers, Senna's amended complaint fails to offer the Court sufficient facts upon which to conclude that an arrest absent probable cause was a "patently obvious," "highly predictable" result of New Bedford's failure to train. Compare Sanders v. City of Boston, No.

15

13-13040-NMG, 2014 WL 4056077, at *3 (D. Mass. Aug. 8, 2014) (citing pleading requirements outlined in Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 19 (1st Cir. 2011) and dismissing claim against city for failure to train or supervise in context of deadly force because "[t]hat a municipal employee committed acts that violated an individual's constitutional rights does not alone permit an inference of municipal culpability and causation"), with Haley, 657 F.3d at 51-52 (reversing dismissal of failure-to-train claim against city and noting that "we do not reach this conclusion lightly").  In Sanders, the plaintiff, who was shot in the back by a police officer after evading arrest following what the officer perceived to be an illegal drug transaction, provided formulaic allegations similar to what Senna has provided here.  Sanders v. City of Boston, No. 13-13040-NMG (Am. Compl., D. 27, May 5, 2014).  In Haley, although the failure to train count itself was sparse, the First Circuit noted that the plaintiff "forthrightly alleged both that the BPD had a standing policy that was itself unconstitutional and that the City failed to train its personnel in their evidence-disclosure obligations despite notice of persistent and ongoing violations."  Haley, 657 F.3d at 51.  The court explained that "[a]lthough couched in general terms, Haley's allegations contain sufficient factual content to survive a motion to dismiss and open a window for pretrial discovery," given the "wholly unexplained" nondisclosure of exculpatory statements, the volume of cases involving similar nondisclosures and the allegation that detectives intentionally suppressed discoverable statements "even when such activity was condemned by the courts."  Id. at 52-53.  These allegations allowed Haley's municipal liability claims to "step past the line of possibility into the realm of plausibility."  Id. at 53.  Senna has not provided the Court with similar information.  Because Senna's complaint offers mere formulaic, conclusory allegations, the Court will not allow the claim against New Bedford to proceed.

Accordingly, the Court ALLOWS Defendants' motions to dismiss Count II against the town of Fairhaven and Count III against the city of New Bedford.

## VI.    Conclusion

For the foregoing reasons, the Court DENIES Ciccone, Swain and Viveiros's motion to dismiss, D. 9, ALLOWS Fairhaven's motion to dismiss as to Count II, D. 11, and ALLOWS IN PART and DENIES IN PART New Bedford, Mello and Nunes's motion to dismiss, D. 26, dismissing Count III against New Bedford.[2]

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[2] To the extent Senna's oppositions request staying the operative date of this order so he may amend his complaint pursuant to Fed. R. Civ. P. 15(a)(2), D. 17 at 1; D. 28 at 1, the Court notes as follows. Although Senna's complaint as to Fairhaven and New Bedford, as amended under Fed. R. Civ. P. 15(a)(1), D. 4, "states the grounds by which a municipality may theoretically be held liable pursuant to section 1983, [Senna] fails to provide even a modicum of fact that would make it plausible that the City would be held liable in this case." McElroy v. City of Lowell, 741 F. Supp. 2d 349, 356 (D. Mass. 2010) (dismissing claims against municipality and advising, "[i]n the event discovery uncovers sufficient facts to establish municipal liability or plaintiff currently possesses such facts, plaintiff may seek leave to amend the complaint"). Since Senna's bare bones request to amend is not supported by additional facts, the Court concludes it would be futile to allow amendment as to Counts II and III at this stage, Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 58 (1st Cir. 2006) (providing, "[t]he absence of supporting information may, in and of itself, be a sufficient reason for the denial of leave to amend"), but does so without prejudice to amend where, as in McElroy, should discovery produce facts providing a basis for same, Senna may seek leave to amend at that point but before the expiration of any deadline set to amend by the Court.